**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| WILDEARTH GUARDIANS, a New Mexico nonprofit corporation, 301 N. Guadalupe St., Suite 201, Santa Fe, New Mexico 87501 <br><br> Plaintiff, <br><br> v. <br><br> The U.S. FOREST SERVICE, a federal agency, 1400 Independence Ave. S.W., Washington, DC 20250 <br><br> Defendants. | Case No.  26-1212 <br><br><br> COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF |

**INTRODUCTION**

1.      This case concerns Defendant, the U.S. Forest Service ("Forest Service" or "the agency"), repeatedly and unlawfully withholding records regarding public lands management from Plaintiff WildEarth Guardians ("Guardians").

2.      Guardians regularly requests documents in the Forest Service's custody under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. The Forest Service regularly violates FOIA's statutory deadlines, in some cases allowing years to pass without responding to Guardians' requests.

3.      These FOIA violations impede Guardians' public interest conservation mission and infringe on the public's right to know what their government is up to on their public lands.

4.      Guardians now challenges the Forest Service's failure to make final determinations, constructive denials, and unlawful withholdings of non-exempt responsive records, for ten separate FOIA requests dating from 2023 through 2025.

5.     To remedy the agency's violations, Guardians seeks an order from this Court (1) declaring that the Forest Service has violated FOIA; (2) compelling the Forest Service to provide all responsive records to Guardians by a date certain; (3) awarding Guardians its reasonable costs and attorneys' fees; and (4) granting such additional relief as Guardians may request or this Court may deem just and proper.

## JURISDICTION AND VENUE

6.     This Court has jurisdiction over this action pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. §§ 1331 and 1361. This Court can grant declaratory relief under 28 U.S.C. § 2201 and injunctive relief under 28 U.S.C. § 2202 and 5 U.S.C. § 552(a)(4)(B). This Court has authority to award costs and attorneys' fees pursuant to 5 U.S.C. § 552(a)(4)(E).

7.     Venue in this Court is appropriate under 5 U.S.C. § 552(a)(4)(B), which provides that all FOIA cases may be heard in this district, and 28 U.S.C. § 1391, because the Forest Service has its primary office in this district.

8.     Because the Forest Service has failed to make a determination on Guardians' FOIA requests within the statutory timeline, Guardians has constructively exhausted its administrative remedies and may seek immediate judicial review. 5 U.S.C. §§ 552(a)(6)(A)(ii), (a)(6)(C)(i).

## PARTIES

9.     Plaintiff WILDEARTH GUARDIANS is a nonprofit conservation organization dedicated to protecting and restoring the wildlife, wild places, wild rivers, and health of the American West. Guardians maintains offices in Arizona, Colorado, Idaho, Montana, New Mexico, Oregon, and Washington. It has over 180,000 members and supporters, many of whom live near or work and recreate on National Forest System lands. Guardians and its members,

supporters, and staff have concrete interests in the appropriate management of National Forests and the lawful implementation of federal environmental laws.

10.     The actions and assessments of the United States and the Forest Service regarding these issues are matters of public concern.

11.     Guardians and its members have a long and successful history of working to protect forest health, clean water, and threatened and endangered species from destructive logging, grazing, and roadbuilding projects on public lands. Guardians relies on public records and documents obtained through FOIA to understand the threats facing public lands and the wildlife species they support; prompt access to this information is therefore critical to Guardians' conservation mission.

12.     Guardians employs public education, community organizing, strategic partnerships, public records requests, information sharing, advocacy with administrative agencies, policy analysis, and litigation to ensure the protection of public lands and federally protected species across the West. Guardians acquires information about federal programs and activities affecting public lands and endangered species through FOIA. Guardians then compiles and analyzes that information, which it disseminates to its members, supporters, the general public, and public officials through various sources including publications, reports, Guardians' website, emails, letters, general news media coverage, and public presentations.

13.     Guardians' successful efforts to educate the public about these issues have significantly contributed to public understanding of governmental operations and activities associated with public land management. Because the Forest Service has not previously disclosed the information sought in the FOIA requests at issue here, its disclosure would significantly enhance public knowledge of logging, grazing, and other projects proposed by the

3

Forest Service, as well as understanding of the agency's evolving approach to public lands management.

14.    Guardians also uses the information that it acquires through FOIA to participate in federal decision-making processes, to file administrative appeals and civil actions, and generally to ensure that federal agencies comply with federal environmental laws. Timely access to these documents is therefore critical to Guardians' conservation mission. Disclosure of the requested records will enable informed public engagement and support appropriate oversight of federal agency operations that impact public lands.

15.    Guardians and its staff, members, and supporters derive concrete benefits from the Forest Service's compliance with FOIA and from timely access to agency records. Accordingly, Guardians, its staff, and its members and supporters are concretely injured by the Forest Service's failure to comply with FOIA's statutory requirements. The relief requested in this lawsuit can redress these injuries.

16.    Guardians brings this action on behalf of itself, its staff, and its members and supporters.

17.    Defendant UNITED STATES FOREST SERVICE is a federal agency within the Department of Agriculture and is in possession, custody, or control of the records sought by Guardians; as such, it has a legal obligation to comply strictly with FOIA. *See* 5 U.S.C. § 552(f).

**STATUTORY BACKGROUND**

18.    Congress enacted FOIA to grant broad public access to government information, and "focuses on the citizens' right to be informed about 'what their government is up to.'" *United States Dep't of Just. v. Reps. Comm. for Freedom of Press*, 489 U.S. 749, 773 (1989). FOIA is intended to ensure transparency and public access, and to foster an informed citizenry

4

capable of holding government leaders accountable.

19.    In keeping with these lofty purposes, FOIA establishes a judicially enforceable duty for federal agencies to make their records "promptly available to any person" who properly requests them. 5 U.S.C. § 552(a)(3)(A). An agency must "determine within 20 days . . . after the receipt of any [FOIA] request whether to comply with such request and . . . immediately notify the person making such request of . . . such determination and the reasons therefore[.]" *Id.* § 552(a)(6)(A)(i)(I).

20.    First, FOIA requires federal agencies to acknowledge receipt of FOIA requests and provide requesters with the date of receipt, an individualized tracking number for each request that will take longer than ten days to process, and an estimated completion date on which the agency anticipates completing action on the request. *Id*. §§ 552(a)(7)(A), (B)(i), (ii). An agency's failure to provide the requester with this information is itself a violation of the statute, regardless of a request's final outcome. *Muttitt v. U.S. Cent. Command*, 813 F. Supp. 2d 221, 231 (D.D.C., 2011) (holding that an agency pattern of failure to provide estimated FOIA request completion dates is actionable).

21.    The agency must next conduct a search calculated to uncover all relevant documents. 5 U.S.C. §§ 552(a)(3)(C)–(D); *see also Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). The government bears the burden of showing that its search was adequate; it is obligated to construe the request liberally and may not narrow the scope of its search to exclude relevant information. The sufficiency of an agency's search is judged by a reasonableness standard that favors broad disclosure. *See Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999).

22.    Once it has located all responsive documents, the federal agency must review

5

them to determine whether the records can be released in whole or in part. Only under limited circumstances may the agency withhold any responsive records—FOIA explicitly sets forth a "basic policy of 'full agency disclosure[.]'" *U.S. Dep't of Just. v. Reps. Comm. for Freedom of Press*, 489 U.S. 749, 773 (1989) (quoting *Dep't of Air Force v. Rose*, 425 U.S. 352, 360 (1976)); *see also* 5 U.S.C. § 552(b). Records may be withheld only if the agency establishes that one of nine "clearly delineated" statutory exemptions applies. *Reps. Comm.*, 489 U.S. at 773.

23.    The government must inform the requester of the scope of documents at issue and whether it intends to release them, and justify its decision to withhold any records statutorily exempt from disclosure. 5 U.S.C. §§ 552(a)(3)(A), 552(a)(6)(A)(i). The government must also notify the requester of their right to appeal any adverse determination and provide the information necessary to do so. *Id.*

24.    Thus, upon receipt of a properly submitted FOIA request, an agency must make a "final determination" on the request by (1) performing a search calculated to uncover all relevant documents; (2) reviewing the records to determine whether they fit within a narrow statutory exemption; (3) determining and informing the requester of the scope of records it intends to produce, and the reasons for withholding any exempt documents; and (4) informing the requester how to appeal any adverse determination.

25.    This final determination must occur within 20 business days of the request.

26.    Congress has set forth the specific circumstances in which federal agencies may take longer than 20 business days to make a final determination on a FOIA request.

27.    First, an agency may toll the determination deadline. *Id.* § 552(a)(6)(A)(ii). As relevant here, the agency may make one "reasonabl[e]" request for further information to assist with locating and identifying responsive documents; the deadline is then tolled pending agency

receipt of the requester's response. *Id*.

28.     Second, if the agency faces "unusual circumstances," it may extend the deadline by written notice to the requester. *Id*. § 552(a)(6)(B)(i). The agency must set forth "the unusual circumstances for such extension and the date on which a determination is expected to be dispatched." *Id*. For extensions exceeding ten business days, the agency must also give the requester an opportunity to limit the request's scope to allow for faster processing or to arrange an alternative time frame for processing the request. *Id*. §§ 552(a)(6)(B)(i)–(ii).

29.     Unless the agency takes these specific steps, it must strictly comply with the statutory 20-workday deadline to make a final determination on a FOIA request. An agency's failure to timely respond to a FOIA request is itself a violation of the statute, regardless of a request's final outcome. *Id*. § 552(a)(6)(A)(ii); *see also Or. Nat. Desert Ass'n v. Locke*, 572 F.3d 610 (9th Cir. 2009).

30.     Unless an agency properly establishes a different disclosure timeline, FOIA's mandate to make records "promptly available" to a requester requires the agency to produce the responsive records within or shortly after the 20-workday deadline. 5 U.S.C. § 552(a)(6)(A)(i).

31.     Agency failure to comply with these deadlines also constitutes constructive denial of the FOIA request at issue. Moreover, once the deadline has passed, the requester is deemed to have constructively exhausted their administrative remedies and may immediately challenge that denial of their request in federal district court. *Id*. § 552(a)(6)(C)(i).

32.     An agency's duties to search for responsive documents, to comply with FOIA's strict deadlines, and to release all non-exempt, relevant documents are judicially enforceable in federal court.

33.     Under FOIA, a district court has jurisdiction to enjoin an agency from

withholding records and to order the agency to produce records that have been improperly withheld, either through actual denial of the request or through the agency's failure to make a timely determination on the request. *Id*. § 552(a)(4)(B). The court may also assess reasonable litigation costs against the government where the plaintiff has substantially prevailed, whether through court order or through a change in the agency's position. *Id.* § 552(a)(4)(E).

34.    If an agency can show that "exceptional circumstances" exist and that the agency is exercising due diligence in responding to the request, the court may retain jurisdiction and allow the agency additional time to complete its review of the records. *Id*. § 552(a)(6)(C)(i).

35.    Notably, the term "exceptional circumstances" does *not* include a delay resulting from a predictable workload of FOIA requests, unless the agency demonstrates reasonable progress in reducing its backlog of pending requests. *Id.* § 552(a)(6)-(C)(ii).

## FACTUAL BACKGROUND

36.    As part of its core conservation mission, Guardians routinely files FOIA requests seeking public records pertaining to public land management. Many of these records are in the custody of the Forest Service.

37.    Guardians has not received final determinations or responsive records for ten FOIA requests submitted to the Forest Service between August, 2023 and December, 2025.[1] The responses are now months or years overdue.

---

[1] At issue in this case are FOIA request numbers 2023-FS-WO-05853-F, 2024-FS-R1-01027-F, 2024-FS-WO-02618-F, 2024-FS-R1-03599-F, 2024-FS-R1-03792-F, 2025-FS-R1-05772-F, 2025-FS-R1-06856-F, 2025-FS-R3-06717-F, 2025-FS-R4-06726-F, and 2025-FS-R5-06759-F (collectively, "the Requests" or "Guardians' Requests"). Unless otherwise specified, all allegations in this pleading pertain to each of the Requests.

**Request No. 2023-FS-WO-05853-F**

38.     On August 2, 2023, Guardians requested records from the Forest Service's Washington Office[2] regarding the "Asset Management Review Board's review of infrastructure-related projects through the Comprehensive Capital Improvement Plan and/or National Asset Management Plan, including prioritization criteria and whether "projects funded through the Great America Outdoors Act (GAOA) and Legacy Roads and Trails (LRT) programs are also filtered through CCIP/NAMP."

39.     Guardians sought these records to better understand how the Forest Service was weighing environmental and sustainability factors in prioritizing funding for land management projects. The LRT program, which decommissions and restores unneeded and environmentally harmful logging roads, has been a long-standing priority for Guardians and affects recreational users across the country; Guardians wished to understand how such projects were being reviewed and prioritized (or deprioritized).

40.     The Forest Service sought clarification of the request, which Guardians provided on August 21, 2023. The agency accepted and assigned the request a tracking number that same day. The Forest Service did not request an extension of time, assert the existence of unusual circumstances, or provide an estimated completion date. The response was therefore due by September 19, 2023.

41.     Guardians contacted the Forest Service on February 7, 2024 to inquire about the

---

[2] During the relevant time period, the Forest Service was administratively divided into nine multistate "regions" encompassing multiple National Forests. *See* U.S. Forest Service, *Regional Offices*, https://www.fs.usda.gov/about-agency/contact-us/regional-offices (last visited March 31, 2026). The agency also maintained a Washington Office. FOIA requests pertaining to a single National Forest are typically sent to that Forest, requests involving multiple Forests within a region are sent to the regional office, and requests involving multiple regions are sent to the Washington Office.

status of its request. The agency responded on February 12, stating that 2023-FS-WO-05853-F was "on the complex track for processing" and that it would be "twelve months before the final response … will be completed," but that Guardians could agree to a "rolling release of records." On February 20, 2024, Guardians stated that it would prefer a rolling release.

42.     The Forest Service has not provided further updates on, produced further records responsive to, or made a final determination regarding 2023-FS-WO-05853-F.

**Request No. 2024-FS-R1-01027-F**

43.     On October 24, 2023, Guardians requested records from the Bitterroot National Forest regarding the development and likely environmental consequences of the "Bitterroot Front" logging project.

44.     As initially proposed, the project would authorize cutting, burning, and herbicide application across 143,340 acres, including old-growth forest stands, riparian zones, inventoried roadless areas, and habitat for federally protected species. It would adversely impact landscapes and species that Guardians has long worked to conserve and protect. Guardians sought records and correspondence related to the project's development to better understand its impacts on local communities, protected roadless areas, and imperiled species.[3]

45.     After several discussions with Forest Service personnel, Guardians resubmitted a narrower version of its request on November 13, 2023. Guardians followed up on November 20, 2023 to confirm receipt. The Forest Service responded the next day, assigning the request a tracking number and estimating that it could provide a final response by April 18, 2024.

46.     When Guardians contacted the Forest Service on May 10, 2024 to request an

_____

[3] At the time of this filing, the Forest Service has not yet issued a final decision approving the Bitterroot Front project. However, the agency has stated that the decision is imminent and the project will be implemented immediately. Guardians has an increasingly urgent need for the relevant documents.

update, the agency confirmed that it was "still working on it" and would try to provide an interim response that week.

47.    When Guardians contacted the Forest Service again on June 13, 2024, the agency stated that it had completed its search but could not provide an estimated completion date for its review. It did not communicate the scope of the records at issue or whether any of them might be withheld. In an attempt to speed the process, Guardians dropped parts of its request and asked the Forest Service to prioritize certain others.

48.    On July 9, 2024, the Forest Service provided "an interim response" to 2024-FS-R1-01027-F. The agency released a number of responsive documents in their entirety, but noted that the "remaining records are still being processed and will make up the bulk of our final response." The Forest Service further stated that "the FOIA provides you the right to appeal this response … within 90 days from the date of our Final letter" and "recommend[ed] [Guardians] wait for our final response" to file any appeal.

49.    The agency did not give an estimated completion date for its final response, nor did it describe the scope of the records still under review.

50.    Guardians next contacted the Forest Service on April 4, 2025 and requested any further records the agency had processed. The Forest Service stated that no further records were available and asked Guardians to further narrow its request. During a subsequent phone call with Forest Service personnel, Guardians suggested record custodians and key words on which to focus.

51.    The Forest Service did not communicate the scope of the records left to review, nor whether it intended to withhold any documents, nor when it expected to finish reviewing these records or provide a final determination on 2024-FS-R1-01027-F.

52.     On May 5, 2025, Guardians attempted to schedule a meeting to discuss further refinements, but it was informed that the FOIA coordinator handling the request had left the agency.

53.     The Forest Service has not provided further updates on, produced further records responsive to, or made a final determination regarding 2024-FS-R1-01027-F.

**Request No. 2024-FS-WO-02618-F**

54.     On February 7, 2024, Guardians requested records from the Forest Service's Washington Office regarding the agency's "Timber Target Report posted on the Forest Service's 'Budget and Performance – FY 2022 Congressional Directives Responses.'"

55.     Guardians sought these documents to better understand the changing levels of logging on Forest System land and its anticipated environmental impacts. This information is central to Guardians' work protecting forests on public lands and tracking potentially harmful timber sales.

56.     The Forest Service accepted the request and assigned it tracking number 2024-FS-WO-02618-F that same day. It noted that the Washington Office had "a backlog of pending FOIA requests," but it did not request an extension, assert the existence of unusual circumstances, or provide an estimated completion date. The Forest Service's response was therefore due on March 7, 2024.

57.     Guardians contacted the Forest Service on April 24 and August 2, 2024 to inquire about the status of its request. The agency did not respond.

58.     The Forest Service has not provided any updates on, produced records responsive to, or made a final determination regarding 2024-FS-WO-02618-F.

12

**Request No. 2024-FS-R1-03599-F**

59.    On March 26, 2024, Guardians requested records pertaining to predator management on the Helena-Lewis and Clark National Forest; the Forest Service acknowledged receipt and assigned the request a tracking number that same day.

60.    On April 1, 2024, the Forest Service requested clarification: It asserted that it could not accept requests for "records including" inter-agency correspondence regarding, or "records pertaining to" livestock depredations and predator damage management on the Forest, and that Guardians must specifically identify the requested documents. The agency further stated that annual work plans for "animal damage control and/or predator damage management activities" were not Forest-specific and that, even if the Forest Service had the national work plan, it would need to be reviewed and released by a separate agency.

61.    In the interests of obtaining a timely response, Guardians clarified its request as the Forest Service suggested. Specifically, Guardians requested (1) agency guidance, and the Helena-Lewis and Clark National Forest's implementation of that guidance, on wolf- and grizzly bear-livestock conflict prevention from May 1, 2021 to date of search; (2) annual operating instructions, annual operating plans, allotment management plans, and grazing permits or amended permits, for livestock grazing on the Forest; (3) annual work plans for predator damage management activities on the Forest for 2021–2023; and (4) meeting notes and correspondence relating to livestock depredations by wildlife on the Forest from January, 2021 to date of search.

62.    The Forest Service and other agencies frequently respond to predator-livestock interactions by killing predators that have allegedly damaged livestock. Guardians sought these records to better understand how livestock grazing ultimately impacted grizzly bear and wolf populations, and how the Forest Service was managing its grazing program in light of its

obligation to conserve the federally protected grizzly bear.

63. On April 1, the Forest Service acknowledged and stated that it would "get going on" Guardians' updated request. It is unclear whether the agency actually began its search for responsive records. It did not provide an estimated date of completion.

64. On January 29, 2026, Guardians contacted the Forest Service's FOIA liaison to ask for an estimated date of completion. The agency did not respond.

65. The Forest Service has not provided any updates on, produced records responsive to, or made a final determination regarding 2024-FS-R1-03599-F.

**Request No. 2024-FS-R1-03792-F**

66. On April 4, 2024, Guardians made the same request for records pertaining to predator management on the Bitterroot National Forest. The Forest Service immediately acknowledged receipt and assigned the request a tracking number, which it updated later that day to reflect that the request was being processed by the agency's Region 1 office.

67. On January 29, 2026, Guardians contacted the Forest Service to ask for an estimated date of completion. The agency did not respond.

68. The Forest Service has not provided any updates on, produced records responsive to, or made a final determination regarding 2024-FS-R1-03792-F.

**Request No. 2025-FS-R1-05772-F**

69. On March 14, 2025, Guardians requested records from the Forest Service's Region 1 office regarding the Nez Perce-Clearwater National Forest Land Management Plan revision. Such "forest plans" guide management decisions for an entire National Forest, setting standards and guidelines for all agency projects; once adopted or revised, the plans remain in place for decades. Understanding the development, scientific underpinnings, and potential

environmental consequences of these plans is critical to Guardians' work.

70.    Guardians requested an index of the revision planning record, explaining that this would "help us identify documents not available on the [agency's] website that we could then ask for specifically." Guardians also sought documents regarding impacts to threatened and endangered species including grizzly bear, Canada lynx, wolverine, and salmon.

71.    The Forest Service accepted the request and assigned it a tracking number that same day. The agency's response was due on April 11, 2025.

72.    Guardians contacted the Forest Service on April 4, 2025 to inquire about the status of its request. On April 7, 2025, the Forest Service responded, stating that it was still searching for responsive files and that "it might take a minute" to review those it had already located. However, the agency did not request an extension, assert the existence of unusual circumstances, or provide an estimated completion date.

73.    The Forest Service also sought to clarify the scope of the request, noting that many potentially relevant documents were available on the project website; Guardians reiterated that it was not seeking, and the agency need not review or provide, any documents already publicly available.

74.    Guardians contacted the Forest Service again on May 5, 2025, requesting an update. The agency did not respond.

75.    The Forest Service has not provided any further updates on, produced records responsive to, or made a final determination regarding 2025-FS-R1-05772-F.

**Requests Nos. 2025-FS-R1-06856-F, 2025-FS-R3-06717-F,
2025-FS-R4-06726-F, and 2025-FS-R5-06759-F**

76.    On April 30, 2025, Guardians submitted individual FOIA requests to five regional Forest Service offices seeking records "related to timber sales implemented using Designation by

15

Prescription (DxP) and/or Designation by Description (DxD) on national forest lands" in each region.[4]

77.     "Designation by prescription" and "designation by description" are methods for designing and implementing logging projects: Rather than marking specific trees to cut, the Forest Service provides broad guidelines on how to log a forest stand and a timber contractor decides which trees to take. These methods have been criticized for giving too much control over forest management to private logging companies. Guardians sought to understand how the Forest Service plans logging projects on public lands, how much oversight it retains during project implementation, and what the environmental consequences of these methods are.

*Request No. 2025-FS-R1-06856-F*

78.     On May 12, 2025, the Forest Service's Region 1 office informed Guardians that it had accepted the request and assigned it a tracking number on May 1, 2025. The Forest Service stated that it had a "backlog of pending FOIA requests" but did not request an extension of time. The agency's response was therefore due on May 30, 2025. Guardians requested an update on June 6, 2025 but never received a reply, and the Forest Service has never provided an update regarding 2025-FS-R1-06856-F.

*Request No. 2025-FS-R3-06717-F*

79.     On May 1, 2025, the Forest Service's Region 3 office requested clarification of the request, asking Guardians to define "timber sales," "implemented," and "records." Guardians responded that same day.

80.     After further written clarification on May 12 and a phone call on May 15, 2025, the agency informed Guardians on May 21, 2025 that it had accepted the request and assigned it

---

[4] The Forest Service's Region 2 office has fully responded to Guardians' request, which is therefore not at issue here.

a tracking number. The Forest Service's response was therefore due no later than June 20, 2025.

81. The Forest Service did not request an extension of time and has never provided an update regarding 2025-FS-R5-06759-F.

***Request No. 2025-FS-R4-06726-F***

82. On June 6, 2025, Guardians contacted the Forest Service's Region 4 office to confirm that its request had been received. The agency responded on June 9, 2025, stating that it had accepted the request on May 2, 2025 and assigned it a tracking number. The Forest Service further noted that, due to "a huge backlog of requests," the soonest it could respond to the request would be July 18, 2025.

83. The Forest Service has never provided an update regarding 2025-FS-R4-06726-F.

***Request No. 2025-FS-R5-06759-F***

84. On May 1, 2025, the Forest Service's Region 5 office requested clarification on the scope of Guardians' request, which Guardians provided that same day. The agency reached out again on May 5 to confirm the scope of the request; when Guardians did so on May 7, 2025, the Forest Service accepted the request and assigned it a tracking number. The agency's response was therefore due on June 5, 2025. The Forest Service did not request an extension of time and has never provided an update regarding 2025-FS-R5-06759-F.

85. The Forest Service has never produced records responsive to or made a final determination regarding 2025-FS-R1-06856-F, 2025-FS-R3-06717-F, 2025-FS-R4-06726-F, or 2025-FS-R5-06759-F.

86. The documents sought in each of Guardians' Requests concern the Forest Service's management of public lands and its compliance with bedrock environmental laws. These are matters of public interest central to Guardians' overall conservation mission.

17

87.    As of the date this action was filed, the Forest Service has not described, and Guardians has been unable to evaluate, the sufficiency of the agency's search for any of the Requests at issue. For the majority of the Requests, it is unclear whether the agency has even begun to search for responsive records, much less whether any such search was adequate.

88.    As of the date this action was filed, the Forest Service has not given Guardians current estimated completion dates for the Requests at issue—in the few cases where the agency did provide an estimated completion date, that date has long since passed without an update or final determination.

89.    As of the date this action was filed, the Forest Service has not communicated to Guardians the scope of the documents it intends to release or withhold in response to Guardians' Requests.

90.    With the exception of 2024-FS-R1-01027-F, the Forest Service has not provided any records responsive to Guardians' Requests; "the bulk of" the records responsive to 2024-FS-R1-01027-F remain outstanding and it appears that no progress has been made in reviewing them since July 2024.

91.    The Forest Service has not asserted that any of FOIA's statutory exemptions to disclosure apply to any of the documents Guardians requested, nor has it given any rationale for withholding responsive records.

92.    This pervasive agency inaction constitutes unlawful failure to conduct an adequate search for responsive records, unlawful failure to make final determinations on Guardians' Requests, unlawful denial of Guardians' Requests, and unlawful withholding of documents responsive to Guardians' Requests.

93.    This lawsuit is necessary to compel the Forest Service to disclose all responsive,

18

non-exempt records at issue.

94.    The delays at issue in this case result from a predictable workload of FOIA requests and foreseeable personnel turnover.[5] No exceptional circumstances exist that would allow this Court to grant the Forest Service more time to review and disclose requested records. *See id*. § 552(a)(6)(C).

95.    Guardians' claims are not insubstantial within the meaning of 5 U.S.C. § 552(a)(4)(E)(ii)(II).

96.    Based on the nature of Guardians' professional activities, Guardians will continue to rely on FOIA to request Forest Service documents for the foreseeable future. Guardians' professional activities will be adversely affected if the Forest Service continues to violate FOIA's disclosure provisions.

97.    Based on the Forest Service's past and current conduct, the agency will likely continue to violate FOIA and Guardians' right to receive public records unless enjoined and made subject to a declaration of Guardians' legal rights by this Court.

## FIRST CLAIM FOR RELIEF
### The Forest Service Failed to Conduct an Adequate Search for Responsive Records

98.    Guardians incorporates by reference all allegations in the preceding paragraphs.

99.    The Forest Service has a statutory obligation to perform an adequate search reasonably calculated to uncover all records responsive to Guardians' FOIA requests. 5 U.S.C. §§ 552(a)(3)(C)–(D). Under FOIA, agencies bear the burden of demonstrating the adequacy of their search beyond a material doubt. The Forest Service has not done so here.

---

[5] Moreover, to the extent that these delays are due to abnormal reductions in the federal workforce, this situation was predictable, avoidable—and a problem entirely of the government's own making. The Forest Service cannot arbitrarily cut the personnel needed to fulfill its statutory duties and then cite personnel shortages to evade its statutory duties. Such a self-inflicted wound does not constitute exceptional circumstances.

100.    The Forest Service has failed to describe the scope or methods of its search for records responsive to any of Guardians' Requests. Indeed, in most cases, there is no indication that the Forest Service has completed—or even begun—its search for responsive records.

101.    The Forest Service has violated and is violating Guardians' statutory rights by failing to perform adequate searches reasonably calculated to uncover all records responsive to Guardians' Requests.

**SECOND CLAIM FOR RELIEF**
**The Forest Service Failed to Make a Timely Determination on Guardians' FOIA Requests**

102.    Guardians incorporates by reference all allegations in the preceding paragraphs.

103.    The Forest Service is obligated to process all properly submitted FOIA requests in the manner set forth by the statute. The agency must "determine within 20 days . . . after the receipt of any [FOIA] request whether to comply with such request and . . . immediately notify the person making such request of . . . such determination and the reasons therefore[.]" 5 U.S.C. § 552(a)(6)(A)(i)(I). This notification must communicate the scope of the responsive documents the agency has located and intends to produce, explain the agency's rationale for any withholdings, and inform the requester of its right to appeal. *Id*. § 552(a)(3)(A).

104.    Only under specific, statutorily prescribed circumstances may the agency extend its deadline to make a final determination for each FOIA request, and it may not do so indefinitely. *See id.* § 552(a)(6)(B).

105.    The Forest Service has failed to make a final determination for any of Guardians' Requests at issue here. It has failed to properly invoke FOIA's provisions allowing for expansions of time. Even where the agency has requested extensions or alternative timeframes for disclosure, these dates have long since passed with no explanation or updated estimates for completion dates. *See supra* ¶¶ 41, 45, 82.

20

106.    At the time of this filing, the Forest Service has exceeded its time to make a determination on Guardians' Requests by at least three and as many as thirty months. *See supra* ¶¶ 38–41, 43, 45, 54, 56, 59–60, 63, 66, 69, 71, 76, 78–80, 82, 84, 86–87.

107.    The Forest Service has failed to communicate the scope of the responsive documents it has located and whether it intends to withhold any of the records. It has not made any final determination on Guardians' Requests that Guardians might appeal.[6]

108.    The Forest Service has violated and is violating Guardians' statutory rights by failing to make the requisite determinations within twenty days of receiving Guardians' Requests. *See* 5 U.S.C. § 552(a)(6)(A)(i).

### THIRD CLAIM FOR RELIEF
### The Forest Service Constructively Denied Guardians' Requests and Unlawfully Withheld Non-Exempt Responsive Records

109.    Guardians incorporates by reference all allegations in the preceding paragraphs.

110.    Agencies must make their records "promptly available" to members of the public who properly request them. 5 U.S.C. § 552(a)(3)(A). To ensure compliance with this core provision, FOIA treats an agency's failure to timely respond to a request as a constructive denial of that request. *See id.* § 552(a)(6)(C).

111.    An agency may deny a FOIA request and withhold responsive records only under narrowly circumscribed situations. *See id.* § 552(b). The government must release all responsive records unless it can provide a detailed rationale for withholding them under a specific, statutorily defined exemption. *See id.* The government at all times bears the burden of justifying its denial of a FOIA request and the withholding of any responsive records.

---

[6] The Forest Service provided an interim response to 2024-FS-R1-01027-F, but never made a final determination on the request. Guardians thus had no cause or opportunity to file an administrative appeal on 2024-FS-R1-01027-F. *See* 5 U.S.C. §§ 552(a)(6)(A), (a)(6)(C).

112.    Here, the Forest Service has failed to make a determination on Guardians' Requests, constituting a denial of the Requests. The Forest Service failed to justify the denial of Guardians' FOIA requests.

113.    With the exception of 2024-FS-R1-01027-F (where the bulk of responsive records has yet to be reviewed or released), the agency has failed to produce any documents at all, constituting a withholding of responsive records. The Forest Service has failed to justify these withholdings.

114.    Guardians has a statutory right to the records it seeks, which are "agency records" within the meaning of FOIA, and there is no legal basis for the Forest Service to assert that any of FOIA's nine disclosure exemptions apply to the requested records. *See id.* § 552(b)(1)–(9). The constructive denial of Guardians' Requests and withholding of responsive records is therefore unlawful.

115.    The Forest Service has violated and is violating Guardians' statutory rights by unlawfully denying the Requests and withholding responsive, non-exempt records. *See id.*

### REQUEST FOR RELIEF

WHEREFORE, Guardians respectfully requests that this Court:

A.    Declare that the Forest Service has violated FOIA for the reasons set forth above;

B.    Order the Forest Service to comply immediately with FOIA by providing Guardians with the required determination and estimated completion date for, and all non-exempt public records responsive to Guardians' FOIA Requests Nos. 2023-FS-WO-05853-F, 2024-FS-R1-01027-F,   2024-FS-WO-02618-F,   2024-FS-R1-03599-F,   2024-FS-R1-03792-F, 2025-FS-R1-05772-F, 2025-FS-R1-06856-F, 2025-FS-R3-06717-F, 2025-FS-R4-06726-F, and 2025-FS-R5-06759-F;

22

C.      Award Guardians its costs and reasonable attorneys' fees in this action pursuant to

5 U.S.C. § 552(a)(4)(E)(ii)(II); and

D.      Grant Guardians such further and additional relief as Guardians may later request

or this Court may deem just and proper.

Respectfully submitted this 10th day of April, 2026.

*/s/ Jennifer Schwartz*
Jennifer R. Schwartz
Bar No. OR072978
WildEarth Guardians
213 SW Ash St., Suite 202
Portland, OR 97204
503-780-8281
jschwartz@wildearthguardians.org

*Attorney for Plaintiff WildEarth Guardians*